## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Ste. 400<br>Washington, DC 20005,<br><br>               Plaintiff,<br><br>      v.<br><br>FEDERAL ELECTION COMMISSION<br>1050 First Street, NE<br>Washington, DC 20463,<br><br>            Defendant. | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

On December 19, 2019, Plaintiff Campaign Legal Center ("CLC") filed an administrative complaint with the Federal Election Commission ("FEC" or "Commission") alleging that Iowa Values, a 501(c)(4) nonprofit, violated the Federal Election Campaign Act ("FECA") by failing to register as a political committee and failing to report its contributions, expenditures, and debts. In June 2019, Iowa Values initiated a voter outreach and digital advertising campaign aimed at supporting Iowa Senator Joni Ernst. As part of this "election-long effort by Iowa Values to highlight the work of Sen. Joni Ernst," the group devoted substantial resources to running ads in support of Ernst. A leaked fundraising email and strategy memo published by the *Associated Press* also highlight Iowa Values's "mission" and "focus" in 2019 as supporting Senator Ernst's

reelection campaign. Under federal law, an organization whose "major purpose" is campaign activity is required to register with the FEC and disclose the sources of its spending. By failing to do so, Iowa Values violated federal law.

Plaintiff's administrative complaint against Iowa Values has now been pending with the FEC for more than 190 days, the 2020 general election is four months away, and the FEC has taken no action. Plaintiff respectfully requests that this Court declare the FEC has acted contrary to law on account of its failure to act on CLC's complaint, and order the FEC to conform within 30 days. If the FEC does not conform within 30 days, FECA authorizes Plaintiff to commence a civil action against Iowa Values to enforce the requirements of 52 U.S.C. §§ 30102-30104.

\*       \*       \*

1.     This is an action under the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30109(a)(8)(A), for unlawful agency delay.

2.     Based on public information available about Iowa Values's public statements, fundraising appeals, and advertising to support Senator Ernst in 2019, there is reason to believe that Iowa Values met the definition of "political committee" under federal law and that the organization failed to register, organize, and report as a federal political committee in accordance with 52 U.S.C. §§ 30102-30104.

3.     On December 19, 2019, Plaintiff filed an administrative complaint with the FEC alleging that Iowa Values violated 52 U.S.C. §§ 30102-30104 by failing to register as a political committee and file periodic disclosure reports in accordance with FECA.[1]

4.     FECA provides administrative complainants with a right of action against the FEC if the Commission fails to act on their complaint within 120 days, at which point "the court may

---

[1]     *See* Ex. 1 (Admin. Compl.) ¶ 2.

declare that . . . the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring . . . a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C).

5.      Plaintiff's administrative complaint with the FEC has now been pending for more than 190 days, and, on information and belief, the Commission has taken no action on the complaint since receiving it. Plaintiff therefore requests that this Court declare the FEC has acted contrary to law by failing to act on the administrative complaint, and order the Commission to conform within 30 days by acting on Plaintiff's complaint.

## JURISDICTION AND VENUE

6.      This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7.      Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

## THE PARTIES

8.      Plaintiff Campaign Legal Center ("CLC") is a nonpartisan, nonprofit organization that works to strengthen American democracy through, among other activities, local, state, and federal efforts to ensure that the public has access to information regarding the financing of U.S. election campaigns.

9.      As part of this effort, CLC conducts research, authors reports and articles, and regularly provides expert analysis to the media. CLC also litigates throughout the country regarding campaign finance matters; files FEC complaints requesting that enforcement actions be taken against individuals or organizations that violate the law; participates in rulemaking and advisory opinion proceedings before the FEC to ensure that the agency is properly interpreting and

enforcing federal election laws; and engages in legislative advocacy for reform measures at the federal, state, and local level.

10.    CLC relies on the accurate and complete reporting of campaign finance information to carry out activities central to its mission, including the production of reports and other materials to educate the public about campaign spending and the true sources and scope of candidates' financial support. These activities are obstructed when information that is subject to mandatory disclosure under FECA is not publicly available.

11.    CLC expends significant resources assisting reporters and other members of the media in their investigative research into candidates' financial support and relationships with donors, to ensure that the public is equipped with the information necessary to evaluate different candidates and messages and to cast informed votes.

12.    CLC also uses its analyses of federal campaign finance disclosure information to support its administrative practice at the FEC and before state and local campaign finance agencies, and to defend campaign finance laws in its active docket of cases in federal and state courts.

13.    Defendant FEC is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106(b).

## BACKGROUND

### *Governing Law*

14.    FECA defines a "political committee" as "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year." 52 U.S.C. § 30101(4)(A).

15.     In *Buckley v. Valeo*, 424 U.S. 1 (1976), the Supreme Court construed FECA's definition of "political committee" to "only encompass organizations that are under the control of

a candidate or the major purpose of which is the nomination or election of a candidate." *Id.* at 79. Again, in *FEC v. Massachusetts Citizens for Life, Inc.*, 479 U.S. 238 (1986), the Court invoked the "major purpose" test in the context of analyzing the activities of a 501(c)(4) corporation, explaining that if an organization's election-related spending activities "become so extensive that the *organization's major purpose may be regarded as campaign activity*, the corporation would be classified as a political committee." *Id.* at 262 (emphasis added). In such circumstances, the Court explained, the group would become "subject to the obligations and restrictions applicable to those groups whose primary objective is to influence political campaigns." *Id.* In *McConnell v. FEC*, 540 U.S. 93 (2003), the Supreme Court restated the "major purpose" standard for political committee status as it was articulated in *Buckley*. *Id.* at 170 n.64.

16.     The FEC has explained that:

> [D]etermining political committee status under FECA, as modified by the Supreme Court, requires an analysis of both an organization's specific conduct—whether it received $1,000 in contributions or made $1,000 in expenditures—as well as its overall conduct—whether its major purpose is Federal campaign activity (*i.e.*, the nomination or election of a Federal candidate).

Supplemental Explanation and Justification on Political Committee Status, 72 Fed. Reg. 5595, 5597 (Feb. 7, 2007).

17.     "[A]n organization['s] relative spending in the most recent calendar year" is a particularly relevant time period for assessing a group's major purpose. *Citizens for Responsibility and Ethics in Washington v. FEC*, 209 F. Supp. 3d 77, 93-94 (D.D.C. 2016).

18.     Importantly, there is no bright-line requirement that more than 50% of an organization's total spending must be for direct campaign activity in order for it to satisfy the major purpose test for political committee status. In addition to an organization's overall spending, its public statements, advertisements, communications with donors, and fundraising appeals are all

relevant to determining whether its major purpose is the nomination or election of federal candidates.

19.     Accordingly, there is a two-prong test used for determining "political committee" status under federal election law: (1) whether an organization has received "contributions" or made "expenditures" in excess of $1,000 in a calendar year, and, if so, (2) whether the organization's "major purpose" is the "nomination or election of a candidate," as stated by *Buckley*.

20.     An organization that satisfies the definition of "political committee" under the two-prong analysis must file a statement of organization with the FEC, 52 U.S.C. § 30103; comply with the organizational and recordkeeping requirements of 52 U.S.C. § 30102; and file periodic reports of its contributions and expenditures with the FEC, 52 U.S.C. § 30104.[2]

21.     The periodic reports that political committees are required to file with the FEC must publicly disclose information about the committee's contributions and expenditures, including the identity of any donor who has contributed $200 or more to the committee within the calendar year. 52 U.S.C. § 30104(b). Courts have repeatedly recognized the importance of campaign finance disclosure in informing the electorate about sources of political speech. *See, e.g.*, *Citizens United v. FEC*, 558 U.S. 310, 369 (2010) ("[T]he public has an interest in knowing who is speaking about a candidate shortly before an election."); *Stop This Insanity Inc. Emp. Leadership Fund v. FEC*, 761 F.3d 10, 16 (D.C. Cir. 2014) (emphasizing the "First Amendment rights of the public to know the identity of those who seek to influence their vote."); *Citizens for Responsibility and Ethics in*

---

[2]     In addition, a "political committee" that makes contributions to federal candidates, including in-kind contributions or coordinated communications, is subject to limits on the contributions it receives, 52 U.S.C. § 30116(a)(1), (a)(2), (f), and may not accept contributions from corporations. *Id.* § 30118(a). The FEC has concluded that that a political committee that "intends to make only independent expenditures" and "will not make any monetary or in-kind contributions to any other political committee or organization" is not subject to FECA's contribution limits. FEC Advisory Op. 2010-11, at 2 (Commonsense Ten).

*Washington v. FEC*, 209 F. Supp. 3d 77, 81 (D.D.C. 2016) ("[D]isclosure 'open[s] the basic process of our federal election[s] to public view,' . . . by 'provid[ing] the electorate with information' concerning the sources and outlets for campaign money" (internal citations omitted)).

*Facts*

22.     Iowa Values is a tax exempt corporation organized under section 501(c)(4) of the Internal Revenue Code.[3] In June 2019, Iowa Values launched a voter outreach and digital advertising campaign in Iowa to kick off its "election-long effort" to support the campaign of Senator Joni Ernst.[4] That same month, Iowa Values began running paid advertising through Google and Facebook that directly named or featured images of Senator Ernst and promoted her character as a "leader."[5] According to public records, every advertisement that Iowa Values sponsored on those platforms in 2019 named or pictured Senator Ernst, and/or directly pertained to Iowa Values's efforts on her behalf.[6]

23.     On June 27, 2019, Iowa Values announced a "six-month voter education and data collection blitz" and "six-figure[]" digital advertising campaign targeting voters in Iowa, which

---

[3]     *See* Iowa Values, 2018 Return of Organization Exempt from Income Tax, IRS Form 990, at 1 (filed Nov. 11, 2019), https://www.documentcloud.org/documents/6569167-Iowa-Values-2018-Form-990-Public-Copy.html.

[4]     Press Release, Iowa Values, Conservative Organization Begins Voter Outreach (June 27, 2019), https://mailchi.mp/7abf732cf9ed/releaseconservative-organization-begins-voter-outreach?e=%5bUNIQID.

[5]     *See* Political Advertising by Iowa Values, Google Transparency Report, GOOGLE, https://transparencyreport.google.com/political-ads/advertiser/AR237965927210024960 (last visited June 18, 2020); Ads by Our Iowa Values, Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?active_status=all&ad_type=political_and_issue_ads&country=US&impression_search_field=has_impressions_lifetime&view_all_page_id=785144711668660 (last visited June 18, 2020).

[6]     Political Advertising by Iowa Values, Google Transparency Report, *supra* note 5; Ads by Our Iowa Values, Facebook Ad Library, *supra* note 5.

7

the organization described in a press release as "just the beginning of an election-long effort by Iowa Values to highlight the work of Sen. Joni Ernst."[7]

24.     On June 28, 2019, Iowa Values began running paid advertising on Google's ad network that stated "We Deserve Leaders Who Share Our Values Like Joni Ernst."[8] These advertisements ran on Google through July 27, 2019.[9] Subsequently, Iowa Values paid for additional advertisements on Google's network, which included video of Senator Ernst along with the message "Joni Ernst is fighting for us."[10] According to Google's Transparency Report, Iowa Values spent a total of $30,300 for fifteen advertisements on that platform in 2019, all of which named and featured images of Senator Ernst.[11]

25.     Also on June 28, 2019, Iowa Values began running a Facebook video advertisement that featured footage of Senator Ernst, with a voiceover stating "We deserve leaders who have walked in our shoes and share these beliefs—like Joni Ernst. Standing up for Iowans all across our state and fighting for what we believe in."[12] According to public records made available by Facebook, this video advertisement cost between $3,000 and $3,500 and ran until July 27,

---

[7]     Press Release, Iowa Values, *supra* note 4.

[8]     Political Advertising by Iowa Values, Google Transparency Report, *supra* note 5.

[9]     *Id.*

[10]    Ad by Iowa Values (disseminated Aug. 2-Aug. 5, 2019), Google Transparency Report, GOOGLE, https://transparencyreport.google.com/political-ads/advertiser/AR237965927210024960/creative/CR216772840584642560; Ad by Iowa Values (disseminated Aug. 10-Sept. 2, 2019), Google Transparency Report, GOOGLE https://transparencyreport.google.com/political-ads/advertiser/AR237965927210024960/creative/CR427988543244075008.

[11]    *See* Political Advertising by Iowa Values, Google Transparency Report, *supra* note 5.

[12]    Ad by Our Iowa Values, *From caring for our neighbors to standing up for what's right, Joni shares our values* (disseminated June 28-July 27, 2019), Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?id=2786066358088466.

2019.[13] During this same period, Iowa Values also sponsored other Facebook advertisements featuring images of Senator Ernst and recruiting canvassers.[14]

26.     According to information in Google's and Facebook's public ad archives, every advertisement that Iowa Values ran through those platforms in 2019 named or pictured Senator Ernst, and/or directly pertained to Iowa Values's efforts on her behalf.[15] Indeed, there is little evidence of Iowa Values making any public communications in 2019 other than those aimed at supporting Senator Ernst's reelection.

27.     Taken together, Iowa Values's paid public communications demonstrate its major purpose of reelecting Senator Ernst. These targeted digital advertisements—particularly through their focus on Senator Ernst's character as a "leader," unconnected from any meaningful discussion of legislative issues—are susceptible of no reasonable interpretation other than as electoral advocacy for Joni Ernst.[16] The ads' electoral purpose is even more apparent when considered along with Iowa Values's contemporaneous strategy memo describing the organization's plans to

---

[13]     *Id.*

[14]     Ads by Our Iowa Values, Facebook Ad Library, *supra* note 5.

[15]     Each of the eleven ads sponsored by Iowa Values in 2019 available in the Google archive picture and name Joni Ernst, while all but one of Iowa Values's 2019 ads in Facebook's ad library either name or include images of Senator Ernst. *See* Political Advertising by Iowa Values, Google Transparency Report, *supra* note 5; Ads by Our Iowa Values, Facebook Ad Library, *supra* note 5. The sole Facebook ad that does not directly reference Senator Ernst is linked to Iowa Values's press release from June 2019 announcing the campaign in support of Ernst. *See* Ad by Our Iowa Values, *Iowa Values Announces Digital Advertising Blitz and Door to Door Voter Canvassing* (disseminated July 9-July 19, 2019), Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?active_status=all&ad_type=political_and_issue_ads&co untry=US&impression_search_field=has_impressions_lifetime&view_all_page_id=7851447116 68660.

[16]     The Supreme Court has found that communications focused on a particular candidate's "character, qualifications, or fitness for office" can be indicative of an electoral purpose. *FEC v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 469-70 (2007).

"communicate directly with specific segments of the electorate that will be determinant in winning or losing in 2020."[17]

28.    In July 2019, Claire Holloway Avella, the founder and president of Holloway Consulting and a fundraiser for Senator Ernst's campaign committee,[18] sent an email to a potential donor soliciting funds "on behalf of Iowa Values."[19] The email included the subject line "Fundraising Request from Iowa Values 501(c)(4) - promoting issues Senator Joni Ernst advocates,"[20] and attached a strategy memo from Iowa Values that described the organization's plans to target communications supportive of Senator Ernst to those voters who "represent the 'firewall' between winning and losing in 2020 for Senator Ernst."[21]

---

[17]    Iowa Values, *Strategy Overview Iowa Values – 2019*, https://assets.documentcloud.org/documents/6550822/Holloway-Email-Attachment-Iowa-Values-Strategy.pdf, at 1.

[18]    *See* Holloway Consulting Inc., *Our Team*, http://www.hollowayconsulting.net/ourteam.html (last visited June 18, 2020); Joni for Iowa, Disbursements to Holloway Consulting, 2019-2020, FEC.GOV, https://www.fec.gov/data/disbursements/?data_type=processed&committee_id=C00546788&recipient_name=holloway&two_year_transaction_period=2020 (last visited June 18, 2020) (showing $278,770 in disbursements from Ernst's campaign committee to Holloway Avella's consulting firm); Ernst Victory, *You Are Cordially Invited to a Breakfast in Support of Senator Joni Ernst*, http://cdn.idonatepro.com/clientphotos/client3/library/06.19.18_Ernst_Breakfast_Invite.pdf (invitation to a June 19, 2018 fundraiser for Senator Ernst's joint fundraising committee with Claire Holloway Avella listed as the contact). In addition to its connection to Ms. Holloway Avella, Iowa Values was co-founded, in 2017, by Jon Kohan, who now works as a consultant for Ernst's campaign after leaving Iowa Values last year. Brian Slodysko, *'Dark Money' ties raise questions for GOP Sen. Ernst of Iowa*, ASSOCIATED PRESS (Dec. 6, 2019), https://apnews.com/eeb44fc06b0cb202bc1edbd1adee7f7d.

[19]    Email from Claire Holloway Avella to [redacted] (July 2019), http://www.documentcloud.org/documents/6570893-July-2019-Email-From-Fundraiser.html; *see* Slodysko, *supra* note 18.

[20]    Email from Claire Holloway Avella to [redacted] (July 2019), *supra* note 19.

[21]    Iowa Values, *Strategy Overview Iowa Values – 2019*, *supra* note 17 at 1; *see* Slodysko, *supra* note 18.

29.     This email stated:

As a follow up to our introduction by Senator Ernst, I am reaching out to you on behalf of Iowa Values. By way of background, Iowa Values is 501(c)(4) [sic] formed to educate Iowans about common-sense solutions to various public policy issues of national, state, and local importance for which Senator Ernst advocates.
. . .
Attached please find a memo outlining our 2019 strategy. It is our hope that [redacted] will consider an investment of $50,000 to help continue our efforts over the summer months. I have attached a contribution form with wiring instructions for your convenience. As a reminder, contributions to 501(c)(4) entities are not publically [sic] disclosed.[22]

30.     The Iowa Values strategy memo attached to Ms. Holloway Avella's fundraising email began by announcing "The 2020 Election Cycle is upon us and Iowa Values is approaching 2020 with an effort to be data driven and people focused."[23] It continued:

At this point in the election cycle we don't need to communicate with all voters. We do however need to identify and communicate directly with specific segments of the electorate that will be determinant in winning or losing in 2020. Our focus, particularly in 2019, will be to determine what those voters care most about and to communicate with them directly.[24]

31.     The strategy memo described suburban, college-educated women as "voters that lean Republican on the issues but lean away from the GOP at times on the tone of the GOP. We call these voters 'disengagers.' They are an irreplaceable part of a winning coalition and represent the 'firewall' between winning and losing in 2020 for Senator Ernst."[25] Iowa Values further claimed in the memo that it had "identified 126,407 'Disengagers' in Iowa," and that:

The basis of our mission is to shore up those voters through sustained direct communications. We believe it is critical to start this messaging now in order to

---

[22]     Email from Claire Holloway Avella to [redacted] (July 2019), *supra* note 19.

[23]     Iowa Values, *Strategy Overview Iowa Values – 2019*, *supra* note 17, at 1.

[24]     *Id.*

[25]     *Id.* at 2.

provide these voters with the information they will need to be able to fend off the disinformation attacks that will come in 2020.[26]

32.     The strategy memo concluded with the statement "We believe that there is critical work with segments of the electorate that must begin now in 2019 so that Senator Ernst has the best possible jumping off point in 2020."[27]

33.     The content of this strategy memo is further evidence of Iowa Values's major purpose of reelecting Senator Ernst—and that the organization has admitted having that purpose when communicating with prospective donors. For example, the memo informed potential donors that "[t]he basis of [Iowa Values's] mission is to shore up those *voters*"—specifically, college-educated women in the suburbs—who "are an irreplaceable part of a *winning coalition* and represent the 'firewall' between *winning and losing in 2020* for Senator Ernst."[28] Likewise, in the strategy memo, Iowa Values described its "focus, particularly in 2019," as "identify[ing] and communicat[ing] directly with specific segments of *the electorate* that will be determinant in *winning or losing in 2020*."[29]

34.     Moreover, Ms. Holloway Avella attached the strategy memo to an email soliciting a $50,000 contribution on behalf of Iowa Values in order "to help continue our efforts over the summer months."[30] Thus, Iowa Values's "six-figure[]" digital ad campaign and voter outreach "blitz" [31] in 2019 were funded in part by "contributions"—i.e., money or other things of value

---

[26]     *Id.*

[27]     *Id.* at 4.

[28]     *Id.* at 2 (emphasis added).

[29]     *Id.* at 1 (emphasis added).

[30]     Email from Claire Holloway Avella to [redacted] (July 2019), *supra* note 19.

[31]     Press Release, Iowa Values, *supra* note 4.

given for the purpose of influencing a federal election, 52 U.S.C. § 30101(8)(A)(i)—that likely exceeded $1,000 in the aggregate.

35.     Consequently, as evidenced by its public statements and advertising, strategy memo, and fundraising appeals, there is reason to believe that in 2019 Iowa Values met the two-prong test for a federal political committee by: (1) receiving "contributions" in excess of $1,000 and making "expenditures" of more than $1,000 in a calendar year, and (2) having the major purpose of reelecting Senator Ernst. Iowa Values therefore violated 52 U.S.C. §§ 30102-30104 by failing to organize, register, and report as a political committee in accordance with FECA.

## ADMINISTRATIVE PROCEEDINGS

36.     On December 19, 2019, CLC and Margaret Christ, an individual, filed an administrative complaint with the FEC against Iowa Values, alleging that Iowa Values had violated 52 U.S.C. §§ 30102-30104 by failing to register and report as a political committee under FECA.[32]

37.     On December 27, 2019, the FEC sent CLC and Christ a letter acknowledging the receipt of the complaint and designating it MUR No. 7674.

38.     Upon information and belief, the FEC has failed to act on Plaintiff's December 19, 2019 administrative complaint against Iowa Values, which has been pending now for more than 190 days.

## CAUSE OF ACTION

### *FECA, 52 U.S.C. § 30109(a)(8)(A)*

39.     Plaintiff repeats and realleges paragraphs 1-38.

40.     The FEC's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A), which provides Plaintiff a cause of action for "a failure of the

---

[32]     Ex. 1 (Admin. Compl.) ¶ 2.

Commission to act on such complaint during the 120-day period beginning on the date the complaint is filed."

## REQUESTED RELIEF

WHEREFORE, Plaintiff requests that this Court:

(1)     Declare that the FEC's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A);

(2)     Order the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3)     Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

(4)     Grant such other relief the Court may deem just and proper.


Dated: June 30, 2020                                    Respectfully submitted,

                                                        /s/ Erin Chlopak

                                                        Erin Chlopak (DC Bar No. 496370)
                                                        Richard A. Graham (DC Bar No. 1500194)
                                                        Molly E. Danahy (DC Bar No. 1643411)
                                                        CAMPAIGN LEGAL CENTER
                                                        1101 14th Street NW, Ste. 400
                                                        Washington, DC 20005
                                                        (202) 736-2200
                                                        echlopak@campaignlegalcenter.org
                                                        agraham@campaignlegalcenter.org
                                                        mdanahy@campaignlegal.org