# EXHIBIT 1

**BEFORE THE FEDERAL ELECTION COMMISSION**

CAMPAIGN LEGAL CENTER
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200

MARGARET CHRIST
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200

v. MUR No. ________

IOWA VALUES
15920 Hickman Road, Ste 400 PMB 400
Clive, IA 50325

**COMPLAINT**

1. This complaint is filed pursuant to 52 U.S.C. § 30109(a)(1) and is based on information and belief that Iowa Values has violated the Federal Election Campaign Act ("FECA"), 52 U.S.C. § 30101, *et seq*.

2. Iowa Values, an entity organized under Section 501(c)(4) of the tax code and working closely with Senator Joni Ernst, has the major purpose of influencing Senator Ernst's reelection, according to a strategy memo that accompanied a fundraising appeal, but has failed to register as a political committee and to publicly disclose its contributors, in violation of 52 U.S.C. §§ 30102-04. FECA guarantees voters' right to know which wealthy special interests are spending big money to influence our vote and our government, and this scheme undermined that right.

3. "If the Commission, upon receiving a complaint . . . has reason to believe that a person has committed, or is about to commit, a violation of [FECA] . . . [t]he Commission *shall* make an

investigation of such alleged violation . . . ." 52 U.S.C. § 30109(a)(2) (emphasis added); *see also* 11 C.F.R. § 111.4(a).

4. Campaign Legal Center ("CLC") is a nonpartisan, nonprofit 501(c)(3) organization whose mission is to protect and strengthen the U.S. democratic process through litigation and other legal advocacy. CLC participates in judicial and administrative matters throughout the nation regarding campaign finance, voting rights, redistricting, and government ethics issues.

## FACTS

5. Joni Ernst is a U.S. Senator for Iowa and a candidate in Iowa's June 2, 2020 U.S. Senate primary.[1] Her campaign committee is Joni for Iowa (ID: C00546788).[2]

6. Iowa Values is a corporation exempt from income tax under Section 501(c)(4) of the Internal Revenue Code.[3]

7. On June 27, 2019, Iowa Values announced a "six-month voter education and data collection blitz" and "six-figure[]" digital advertising campaign that was aimed at Iowa voters that it

---

[1] Joni K. Ernst, Statement of Candidacy, FEC Form 2, at 1 (amended Nov. 8, 2019), http://docquery.fec.gov/pdf/457/201911089165338457/201911089165338457.pdf.

[2] Joni for Iowa, Statement of Organization, FEC Form 1, at 2 (amended Nov. 8, 2019), https://docquery.fec.gov/pdf/461/201911089165338461/201911089165338461.pdf

[3] *See* Iowa Values, 2018 Return of Organization Exempt from Income Tax, IRS Form 990, at 1 (filed Nov. 11, 2019), https://www.documentcloud.org/documents/6569167-Iowa-Values-2018-Form-990-Public-Copy.html. There is also a super PAC registered with the Commission under the name "Iowa Values," but the super PAC is a distinct entity from the 501(c)(4); the super PAC has a different address and website, and on its 2019 mid-year report, the super PAC reported raising only $25 in the first half of 2019, and spending only $2,010: $2,000 on political contributions, and $10 on operating expenditures. *See* Iowa Values, Statement of Organization, FEC Form 1, at 1 (filed July 18, 2019), https://docquery.fec.gov/pdf/370/201907189151434370/201907189151434370.pdf; Iowa Values, 2019 Mid-Year Report, FEC Form 3X (filed July 21, 2019), https://docquery.fec.gov/pdf/150/201907219151611150/201907219151611150.pdf. The super PAC's website is www.iowavalues.com; the 501(c)(4)'s website is www.ouriowavalues.com. *See* Iowa Values, Statement of Organization, *supra* (showing the iowavalues.com URL for the website associated with the super PAC); Iowa Values, *About*, FACEBOOK, https://www.facebook.com/pg/ouriowavalues/about (last visited Dec. 13, 2019) (displaying the ouriowavalues.com URL in the About section of the Facebook page that ran the ads cited in this complaint).

described as "just the beginning of an election-long effort by Iowa Values to highlight the work of Sen. Joni Ernst."[4]

8. The next day, on June 28, 2019, Iowa Values began running digital ads on Google's network that stated "We Deserve Leaders Who Share Our Values Like Joni Ernst."[5] The ads ran through July 27, 2019.[6] Google does not provide precise amounts for an ad's cost, but the aggregate value of these ads fell between $1,300 and $53,000.[7]

9. Also on June 28, 2019, Iowa Values began running a Facebook video ad featuring footage of Joni Ernst, with a voiceover that stated, "We deserve leaders who have walked in our shoes and share these beliefs—like Joni Ernst. Standing up for Iowans all across our state."[8] The ad cost between $1,000 and $5,000 and ran until July 27, 2019.[9] During this period, Iowa Values also ran a series of other Facebook ads, picturing Ernst and recruiting canvassers.[10]

10. In July 2019, Claire Holloway Avella, the Founder and President of Holloway Consulting[11] and a fundraiser for Ernst's campaign committee,[12] sent an email to a potential donor with

---

4 Press Release, Iowa Values, Conservative Organization Begins Voter Outreach (June 27, 2019), https://us3.campaign-archive.com/?e=&u=1e7cc07d8991b902eb884256d&id=f04d90419f.

5 Political Advertising by Iowa Values, Google Transparency Report, GOOGLE, https://transparencyreport.google.com/political-ads/region/US?creative_by_advertiser=region:US;q:iowa%20values;start:1527724800000;end:1575849600000;spend::;impressions::;type::;sort:3&lu=creative_by_advertiser (last visited Dec. 13, 2019).

6 *Id.*

7 *Id.* Google's archive is notoriously incomplete, so other Iowa Values ads may also have run on the network but failed to appear in the archive. Emily Glazer & Patience Haggin, *Google's Tool to Tame Election Influence Has Flaws*, WALL ST. J. (Jul. 17, 2019), https://www.wsj.com/articles/google-archive-of-political-ads-is-fraught-with-missing-content-delays-11563355800.

8 Iowa Values, *From caring for our neighbors to standing up for what's right, Joni shares our values,* (disseminated June 28-July 27, 2019), Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?id=2786066358088466.

9 *Id.*

10 *See* Ads by Our Iowa Values, Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?active_status=all&ad_type=political_and_issue_ads&country=US&impression_search_field=has_impressions_lifetime&view_all_page_id=785144711668660 (last visited Dec. 13, 2019).

11 *See, e.g.*, Holloway Consulting Inc., *Our Team*, http://www.hollowayconsulting.net/ourteam.html (last visited Dec. 12, 2019).

12 *See, e.g.*, Joni for Iowa, Disbursements to Holloway Consulting, 2019-2020, FEC.GOV, https://www.fec.gov/data/disbursements/?data_type=processed&committee_id=C00546788&recipient_name=holloway&two_year_transaction_period=2020 (last visited Dec. 12, 2019) (showing $278,770 in disbursements from

the subject line "Funding Request from Iowa Values 501(c)(4) - promoting issues Senator Joni Ernst advocates."[13] The email, published by the *Associated Press*, [14] stated:

> As a follow up to our introduction by Senator Ernst, I am reaching out to you on behalf of Iowa Values. By way of background, Iowa Values is 501(c)(4) [sic] formed to educate Iowans about common-sense solutions to various public policy issues of national, state, and local importance for which Senator Ernst advocates.
>
> . . . .
>
> Attached, please find a memo outlining our 2019 strategy. It is our hope that [redacted] will consider an investment of $50,000 to help continue our efforts over the summer months. I have attached a contribution form with wiring instructions for your convenience. As a reminder, contributions to 501(c)(4) entities are not publically [sic] disclosed.[15]

11. The 2019 strategy memo attached to the email began by stating, "The 2020 Election Cycle is upon us and Iowa Values is approaching 2020 with an effort to be data driven and people focused."[16] The memo continued:

> At this point in the election cycle we don't need to communicate with all voters. We do however need to identify and communicate directly with specific segments of the electorate that will be determinant in winning or losing in 2020. Our focus, particularly in 2019, will be to determine what those voters care most about and to communicate with them directly.[17]

---

Ernst's campaign committee to Holloway Avella's firm); *see also* Ernst Victory, *You Are Cordially Invited to a Breakfast in Support of Senator Joni Ernst*, http://cdn.idonatepro.com/clientphotos/client3/library/06.19.18_Ernst_Breakfast_Invite.pdf (invitation to a June 19, 2018 fundraiser for Ernst's joint fundraising committee, listing Holloway Avella as the contact); *see also* Email from Claire Holloway Avella to [redacted] (Sept. 2019), http://www.documentcloud.org/documents/6570894-Sep-2019-Email-From-Fundraiser.html (showing Holloway Avella distributing invitations to Ernst campaign fundraisers).

[13] Email from Claire Holloway Avella to [redacted] (July 2019), http://www.documentcloud.org/documents/6570893-July-2019-Email-From-Fundraiser.html.

[14] Bryan Slodysko, *'Dark Money' ties raise questions for GOP Sen. Ernst of Iowa,* ASSOCIATED PRESS (Dec. 6, 2019), https://apnews.com/eeb44fc06b0cb202bc1edbd1adee7f7d.

[15] Email from Claire Holloway Avella, *supra* note 13. The name of the email's recipient was redacted by the *Associated Press*, but the Ernst campaign did not deny the email's authenticity. Slodysko, *supra* note 14.

[16] Iowa Values, *Strategy Overview Iowa Values – 2019*, at 1, https://assets.documentcloud.org/documents/6550822/Holloway-Email-Attachment-Iowa-Values-Strategy.pdf.

[17] *Id*.

12. The memo described suburban, college-educated women as "voters that lean Republican on the issues but lean away from the GOP at times on the tone of the GOP. We call these voters 'disengagers'. They are an irreplaceable part of a winning coalition and represent the 'firewall' between winning and losing in 2020 for Senator Ernst."[18] Iowa Values claimed to "have identified 126,407 'Disengagers' in Iowa," and that:

> The basis of our mission is to shore up those voters through sustained direct communications. We believe it is critical to start this messaging now in order to provide these voters with the information they will need to be able to fend off the disinformation attacks that will come in 2020.[19]

13. The memo concluded with the statement, "We believe that there is critical work with segments of the electorate that must begin now in 2019 so that Senator Ernst has the best possible jumping off point in 2020."[20]

14. According to the Facebook and Google political ad archives, every ad that Iowa Values has run on those platforms in 2019 to date has named Ernst, pictured Ernst, and/or directly pertained to Iowa Values' efforts on her behalf.[21]

## SUMMARY OF THE LAW

15. FECA defines the term "political committee" to mean "any committee, club, association, or other group of persons which receives contributions aggregating in excess of $1,000 during a calendar year or which makes expenditures aggregating in excess of $1,000 during a calendar year." 52 U.S.C. § 30101(4)(A); *see also* 11 C.F.R. § 100.5(a). "Contribution" is defined to

---

[18] *Id*. at 2.

[19] *Id*.

[20] *Id.* at 4.

[21] Specifically, eleven of eleven of the 2019 Iowa Values ads in the Google archive both picture and name Ernst, and all but one of the 2019 Iowa values ads in the Facebook archive name and/or picture Ernst; the sole Facebook ad that does not is an ad that linked to the Ernst-centric press release described previously. *See* Political Advertising by Iowa Values, Google Transparency Report, *supra* note 5; Ads by Our Iowa Values, Facebook Ad Library, *supra* note 10.)

include "any gift, subscription, loan, advance, or deposit of money or anything of value made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(8)(A)(i). "Expenditure" is similarly defined to include "any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything of value, made by any person for the purpose of influencing any election for Federal office." 52 U.S.C. § 30101(9)(A)(i).

16. In *Buckley v. Valeo*, 424 U.S. 1 (1976), the Supreme Court construed the term "political committee" to "only encompass organizations that are under the control of a candidate *or the major purpose of which is the nomination or election of a candidate*." *Id*. at 79 (emphasis added). Later, in *FEC v. Massachusetts Citizens for Life*, 479 U.S. 238 (1986), the Court again invoked the "major purpose" test and noted, in the context of analyzing the activities of a 501(c)(4) group, that if a group's independent spending activities "become so extensive that the *organization's major purpose may be regarded as campaign activity*, the corporation would be classified as a political committee." *Id.* at 262 (emphasis added). In that instance, the Court continued, the group would become "subject to the obligations and restrictions applicable to those groups *whose primary objective is to influence political campaigns*." *Id.* (emphasis added). The Court in *McConnell v. FEC*, 540 U.S. 93 (2003), restated the "major purpose" test for political committee status as iterated in *Buckley*. *Id.* at 170 n.64.

17. The Commission has explained:

> [D]etermining political committee status under FECA, as modified by the Supreme Court, requires an analysis of both an organization's specific conduct—whether it received $1,000 in contributions or made $1,000 in expenditures—as well as its overall conduct—whether its major purpose is Federal campaign activity (*i.e.*, the nomination or election of a Federal candidate).

Supplemental Explanation and Justification on Political Committee Status, 72 Fed. Reg. 5595, 5597 (Feb. 7, 2007).

18. The Commission conducts a fact-specific case-by-case analysis to determine if an organization's major purpose is the nomination or election of federal candidates. For example, the Commission will consider an organization's public statements in determining its purpose,[22] and will examine conduct other than publicly available advertisements, such as materials distributed to donors and fundraising appeals.[23] *See* 72 Fed. Reg. at 5601

19. Courts have upheld the Commission's fact-based major purpose test. *See, e.g.*, *Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544, 555-58 (4th Cir. 2012) ("*RTAA*") (rejecting the claim that the only method to determine PAC status is to examine whether "campaign-related speech amounts to 50% of all expenditures," and concluding that the Commission's comprehensive consideration of multiple factors was "a sensible approach to determining whether an organization qualifies for PAC status" that is "consistent with Supreme Court precedent and does not unlawfully deter protected speech"); *see also Free Speech v. FEC*, 720 F.3d 788, 797-98 (10th Cir. 2013) (upholding the Commission's multi-factor major-purpose approach). Courts reviewing state laws governing political committees have described similar fact-based major purpose tests, *see, e.g.*, *Corsi v. Ohio Elections Comm'n*, 981 N.E.2d 919, 927 (Ohio App. 2012) (quoting *RTAA* and noting that "[t]he determination

---

22 *See, e.g.*, *FEC v. Malenick*, 310 F. Supp. 2d 230, 234-36 (D.D.C. 2004) (court found organization evidenced its major purpose through its own materials, which stated the organization's main goal of supporting the election of the Republican Party candidates for Federal office and through efforts to get prospective donors to consider supporting Federal candidates); *FEC v. GOPAC, Inc.*, 917 F. Supp. 851, 859 (D.D.C. 1996) ("organization's [major] purpose may be evidenced by its public statements of its purpose or by other means"); Advisory Opinion 2006–20 (Unity 08) (organization evidenced its major purpose through organizational statements of purpose on Web site).

23 *Malenick*, 310 F. Supp. 2d at 234-36 (examining organizations' materials distributed to prospective donors).

of an organization's 'primary or major purpose' is a fact intensive analysis and such a determination must weigh a number of considerations"), and upheld state laws that more broadly define "political committee," *see, e.g.*, *Yamada v. Snipes*, 786 F.3d 1182, 1194-95 (9th Cir. 2015) (upholding state law defining political committee to include any group making more than $1,000 in expenditures over two years, regardless of whether the group has the major purpose of influencing an election); *Vt. Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 134-39 (2d Cir. 2014) ("VRTL") (upholding state law defining political committee as any group which accepts more than $1,000 in contributions and makes more than $1,000 in expenditures in a two year election cycle to support or oppose a candidate; rejecting argument that political committee status must be limited to groups with a "major purpose" to influence elections); *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 414-15 (5th Cir. 2014) (upholding state law that defined political committee to include any group which engages in "some" activities that "support[] or oppos[e]" a candidate); *Worley v. Fla. Sec'y of State*, 717 F.3d 1238, 1240, 1253 (11th Cir. 2013) (upholding state law applying political committee status to groups that raise contributions or spend "more than $500 in a year to expressly advocate the election or defeat of a candidate"); *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 470-71, 491 (7th Cir. 2012) (upholding state law defining political committee to include groups that spend more than $3,000 on ads that "almost verbatim" met federal definition of electioneering communications, and rejecting argument that political committee status must be limited to groups with a "major purpose" to influence elections); *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 42, 54-57, 59 (1st Cir. 2011) (upholding disclosure law for political committees, even though law did not require a political committee have a "major purpose" of influencing an election); *Human Life of*

*Wash., Inc. v. Brumsickle*, 624 F.3d 990, 1008-12 (9th Cir. 2010) (upholding state law defining political committee as a group with a "primary or one of the primary purposes" to "affect, directly or indirectly, governmental decision making by supporting or opposing candidates").

20. Courts have also rejected the categorical exclusion of non-express advocacy communications from the major purpose analysis. *CREW v. FEC*, 209 F. Supp. 3d 77, 93 (D.D.C. 2016) ("Indeed, it blinks reality to conclude that many of the ads considered by the Commissioners in this case were not designed to influence the election or defeat of a particular candidate in an ongoing race."); *see also CREW v. FEC*, 299 F. Supp. 3d 83, 89, 101 (D.D.C. 2018).

21. For the reasons set forth above, there is a two-prong test for "political committee" status under federal law: (1) whether the entity or other group of persons has received "contributions" or made "expenditures" of $1,000 or more in a calendar year, and, if so, (2) whether its "major purpose" is influencing the "nomination or election of a candidate," as stated by *Buckley*.

22. Any entity that meets the definition of a "political committee" must file a "statement of organization" with the Commission, 52 U.S.C. § 30103, must comply with the organizational and recordkeeping requirements of 52 U.S.C. § 30102, and must file periodic disclosure reports of its receipts and disbursements, 52 U.S.C. § 30104.[24]

23. The political committee disclosure reports required by FECA must disclose to the Commission and the public, including complainants, specific information regarding such

[24] In addition to its registration and disclosure requirements, a "political committee" that makes contributions, including in-kind contributions and coordinated communications, is subject to limits on the contributions it receives, 52 U.S.C. § 30116(a)(1), (a)(2), (f), and may not accept contributions from corporations, 52 U.S.C. § 30118(a). *See* FEC Ad. Op. 2010-11, at 2 (Commonsense Ten) (concluding that committee that "intends to make only independent expenditures" and "will not make any monetary or in-kind contributions (including coordinated communications) to any other political committee or organization" is not subject to contribution limits).

committee's financial activities, including the identity of any donor who has contributed $200 or more to the committee within the calendar year. 52 U.S.C. § 30104(b). Courts have repeatedly recognized the importance of campaign finance disclosure to informing the electorate. *See*, *e.g.*, *CREW v. FEC*, 209 F. Supp. 3d at 81 ("disclosure 'open[s] the basic process of our federal election[s] to public view,' . . . by 'provid[ing] the electorate with information' concerning the sources and outlets for campaign money" (internal citations omitted)); *cf. Citizens United v. FEC*, 558 U.S. 310, 369 (2010) ("[T]he public has an interest in knowing who is speaking about a candidate shortly before an election."); *see also Stop This Insanity Inc. Emp. Leadership Fund v. FEC*, 761 F.3d 10, 17 (D.C. Cir. 2014) (describing the "First Amendment rights of the public to know the identity of those who seek to influence their vote").

## Causes of Action

### I. Iowa Values Failed to Register as a Political Committee

24. Based on published reports and filings with the Internal Revenue Service, there is reason to believe that Iowa Values met the two-prong test for political committee status by (1) having the "major purpose" of influencing the "nomination or election of a candidate," and (2) receiving contributions of $1,000 or more in a calendar year.

25. In determining an organization's major purpose, the Commission considers materials such as an organization's fundraising appeals[25] and public statements.[26] This evidence indicates that Iowa Values has the major purpose of influencing the election of candidates. For example:

    a) In a strategy memo that accompanied a solicitation for contributions, Iowa Values told potential donors that "[t]he basis of our mission is to shore up those *voters*"

---

25 *See, e.g.*, *FEC v. Malenick*, 310 F. Supp. 2d at 234-36.

26 *See, e.g.*, *FEC v. GOPAC, Inc.*, 917 F. Supp. at 859.

who "represent the 'firewall' between *winning and losing in 2020* for Senator Ernst"—specifically, suburban college-educated women, whom Iowa Values described as "an irreplaceable part of a *winning coalition* and [who] represent the 'firewall' between *winning and losing in 2020* for Senator Ernst."[27]

b) In that strategy memo, Iowa Values described its "focus, particularly in 2019," as "identify[ing] and communicat[ing] directly with specific segments of *the electorate* that will be determinant in *winning or losing in 2020*."[28]

c) Iowa Values emphasized to donors that "*The 2020 Election Cycle* is upon us,"[29] and that "[w]e believe that there is critical work with segments of *the electorate* that must begin now in 2019 so that Senator Ernst has the best possible jumping off point in 2020."[30]

26. Iowa Values' paid public communications further demonstrated its major purpose of reelecting Senator Ernst.[31] The communications included statements like, "We deserve leaders who share our values like Joni Ernst,"[32] "we deserve leaders . . . like Joni Ernst,"[33] and "Joni Ernst is fighting for us."[34] These targeted digital communications—particularly through their focus on Ernst's character as a "leader," unconnected from any discussion of

[27] Iowa Values, *Strategy Overview Iowa Values – 2019*, *supra* note 16, at 2 (emphases added).
[28] *Id*. at 1 (emphases added).
[29] *Id.* (emphasis added).
[30] *Id.* at 4 (emphases added).
[31] Courts have also rejected the categorical exclusion of non-express advocacy communications from the major purpose analysis. *E.g.*, *CREW v. FEC,* 209 F. Supp. 3d at 93.
[32] Political Advertising by Iowa Values, Google Transparency Report, *supra* note 5.
[33] Iowa Values, *From caring for our neighbors to standing up for what's right, Joni shares our values,* (disseminated June 28-July 27, 2019), Facebook Ad Library, FACEBOOK, https://www.facebook.com/ads/library/?id=2786066358088466.
[34] Ad by Iowa Values (Aug. 1-Aug. 4, 2019), Google Transparency Report, https://transparencyreport.google.com/political-ads/advertiser/AR237965927210024960/creative/CR216772840584642560.

issues[35]—are susceptible to no reasonable interpretation other than as advocacy for Joni Ernst. And their electoral purpose is even more apparent when taken together with Iowa Values' contemporaneous strategy memo describing the organization's plans to "communicate directly with specific segments of the electorate that will be determinant in winning or losing in 2020."[36]

27. Moreover, every publicly available digital ad that Iowa Values has run in 2019 to date has named Ernst, pictured Ernst, or otherwise directly pertained to Iowa Values' efforts on her behalf.[37] There is little evidence of Iowa Values engaging in any activities in 2019 *other* than those aimed at influencing Ernst's reelection.

28. Iowa Values' fundraising appeal was accompanied by a strategy memo describing 2019 activities to influence the 2020 election; moreover, Iowa Values' documented activities in 2019 have been overwhelmingly aimed at influencing the election, and the solicitation asked for $50,000 "to help continue our efforts." Therefore, Iowa Values' activities in 2019 were funded by "contributions"—that is, money or other things of value given for the purpose of influencing an election, 52 U.S.C. § 30101(8)(A)(i)—and there is reason to believe those contributions exceeded $1,000.

29. Consequently, as demonstrated by Iowa Values' fundraising appeals, its strategy memo, and its public communications, there is reason to believe that Iowa Values' major purpose in 2019 has been the nomination or election of federal candidates, and because it received over

[35] Courts have found that communications focused on a candidate's "character, qualifications, or fitness for office" can be indicia of an electoral purpose. *E.g.*, *FEC v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 451-52, 469-70 (2007).

[36] Iowa Values, *Strategy Overview Iowa Values – 2019*, *supra* note 16, at 1.

[37] *See* sources cited *supra* ¶14.

$1,000 in contributions in a calendar year, it should have registered as a political committee, as defined at 52 U.S.C. § 30101(4).

30. Therefore, Iowa Values violated 52 U.S.C. §§ 30102 and 30103 by failing to organize and register as a political committee.

## II. Iowa Values Failed to File Reports as a Political Committee

31. As a political committee, Iowa Values is required to file periodic reports with the Commission that, among other things, (1) identify all individuals who contributed an aggregate of more than $200 in a year and the amount contributed; (2) identify all political committees that contributed and the amount; (3) detail outstanding debts and obligations; and (4) list all of Iowa Values' expenditures. 52 U.S.C. § 30104.

32. By failing to file these reports, Iowa Values violated its reporting obligations at 52 U.S.C. § 30104.

## Prayer For Relief

33. Wherefore, the Commission should find reason to believe that Iowa Values violated 52 U.S.C. § 30101, *et seq.*, and conduct an immediate investigation under 52 U.S.C. § 30109(a)(2).

34. The Commission should seek appropriate sanctions for any and all violations, including civil penalties sufficient to deter future violations and an injunction prohibiting the respondents from any and all violations in the future, and should seek such additional remedies as are necessary and appropriate to ensure compliance with the FECA.

Respectfully submitted,

Respectfully submitted,

Campaign Legal Center, by
Brendan M. Fischer
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200

Margaret Christ
1101 14th Street NW, Suite 400
Washington, DC 20005
(202) 736-2200

Brendan M. Fischer
Campaign Legal Center
1101 14th Street NW, Suite 400
Washington, DC 20005
Counsel to the Campaign Legal Center,
Margaret Christ

December 19, 2019

## VERIFICATION

The complainants listed below hereby verify that the statements made in the attached Complaint are, upon their information and belief, true.

Sworn pursuant to 18 U.S.C. § 1001.

For Complainant Margaret Christ

Margaret Christ

Sworn to and subscribed before me this 19th day of December 2019.

Notary Public

NATHANIEL CASPARI NOTARY PUBLIC MY COMMISSION EXPIRES 2/29/2024 DISTRICT OF COLUMBIA

For Complainant Campaign Legal Center

Brendan M. Fischer

Sworn to and subscribed before me this 19th day of December 2019.

Notary Public